**Electronically Filed**
**Intermediate Court of Appeals**
**30211**
**29-SEP-2011**
**08:36 AM**

NO. 30211

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
SUSAN D. LANGSNER, Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
HONOLULU DIVISION
(CASE NO. 1DTC-09-037349)

SUMMARY DISPOSITION ORDER
(By: Nakamura, C.J., Leonard and Ginoza, JJ.)

Defendant-Appellant Susan D. Langsner (Langsner) appeals the Notice of Entry of Judgment and/or Order and Plea/Judgment filed on October 20, 2009 in the District Court of the First Circuit, Honolulu Division (District Court).[1]

Langsner was convicted of Excessive Speeding, in violation of HRS § 291C-105(a)(1)(c)(1) (Repl. 2007 & Supp. 2009).

On appeal, Langsner contends that (1) the District Court abused its discretion in denying her motion to compel discovery because the requested materials are reasonable and because the District Court incorrectly believed that the materials could be obtained through a subpoena duces tecum and (2) insufficient evidence existed as to the accuracy of the laser gun.

---

[1] The Honorable Leslie Hayashi presided.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Langsner's points of error as follows.

I.   **Discovery**

A ruling limiting discovery is reviewed for an abuse of discretion. State v. Peseti, 101 Hawaiʻi 172, 178, 65 P.3d 119, 125 (2003); see also Hawaiʻi Rules of Penal Procedure (HRPP) Rule 16(d) (2010).

On July 28, 2009, Langsner filed a motion to compel discovery (Discovery Motion). The Discovery Motion sought the following items:

(a)   [Honolulu Police Department] HPD departmental policies and procedures for conducting speeding citations;

(b)   The HPD training manual for speeding citations;

(c)   The operation manual for the specific laser gun used in the case;

(d)   Any documentation related to the following:
  i.     The brand and model of the gun;
  ii.    The age of the gun;
  iii.   When the gun was purchased and first put into use by HPD;
  iv.    The period of warranty of the gun;
  v.     Where the gun is stored;
  vi.    How the gun is maintained;
  vii.   When the gun was last tested or calibrated;
  viii.  All certification documents;
  ix.    All police maintenance, servicing, repair and calibration records for any laser devise [sic] used in the instant case;
  x.     Laser readings;
  xi.    Laser unit test results for the officer(s) in the instant case;
  xii.   The laser gun training and qualification test results for the officer(s) in the instant case;
  xiii.  The firearm qualification test results for the officer using the laser for the one year prior and the one year after the date of Defendant's citation/arrest;
  xiv.   The fixed distance used to calibrate the subject laser unit and location where the calibration took place;
  xv.    The delta distance used to calibrate the subject laser unit and location where the calibration took place;
  xvi.   Any calibration reading;
  xvii.  Manufacturer's service representative's maintenance, service and calibration records for the laser gun in question;

xviii.    The laser gun manufacturer's established procedures for verifying and validating that the instrument was in proper working order;

xix.    Written verification that said manufacturer's established procedures were followed[;]

xx.    Written verification that the laser gun was in proper working order at the time the laser gun was used[;]

xxi.    Records of regular maintenance, servicing, upkeep, repair, modification and/or calibration of the laser gun performed by the manufacturer (or the manufacturer's duly trained and licensed representative), a year before and a year after the dates of any alleged offense(s), as well as official maintenance, repair, modification, servicing, and/or calibration manuals for the device in question prepared by and/or relied upon by the manufacturer (or the manufacturer's duly trained and licensed representative).

The State did not oppose items (d)(xiv) and (d)(xv) regarding calibration distance and location used for the laser gun. The District Court ordered discovery of "the State v. Lo,[2] State v. Lee[3] information" and denied the remainder of the items, but stated "Defense does have the option of subpoenaing HPD for the user's manual and the like."

The District Court, by its order, permitted discovery of the brand and model of the gun (item (d)(i)), pursuant to Lee; laser readings (item (d)(x)), pursuant to Lee;[4] the fixed distance used to calibrate the subject laser unit and location where the calibration took place (item (d)(xiv)), pursuant to Lo; the delta distance used to calibrate the subject laser unit and location where the calibration took place (item (d)(xv)), pursuant to Lo; and any calibration reading (item (d)(xvi)), pursuant to Lee.

It appears that the Discovery Motion sought five types of documents and information: (1) documents related to the operation and maintenance of the laser gun and the training and

---

[2]  State v. Lo, 116 Hawai'i 23, 169 P.3d 975 (2007).

[3]  State v. Lee, 120 Hawai'i 256, 203 P.3d 676, No. 29017, (App. Mar. 13, 2009) (SDO).

[4]  Laser and calibration readings are discoverable under Lee "to the extent they are readings taken in preparation for or during the firing of the laser gun at [defendant's] vehicle on the [date] in question." Lee, SDO at 5-6.

certification of the officer in the use of the laser gun (Operation, Maintenance and Training Documents); (2) documents related to the policies and procedures of the HPD regarding speeding citations (Speeding Documents); (3) documents related to the date of acquisition and the age of the laser gun (Equipment Age Documents); (4) written verifications that manufacturer's procedures were followed and that the laser gun was in proper working order (Written Verifications); and (5) "[t]he brand and model of the gun"; the "[l]aser readings"; and "[a]ny calibration reading."

In State ex rel. Marsland v. Ames, 71 Haw. 304, 313-14, 788 P.2d 1281, 1286-87 (1990), the Hawai'i Supreme Court held that, contrary to HRPP Rule 16(d),[5] the trial court exceeded its authority by ordering the State to disclose manufacturer's manuals, instructions, specifications pertaining to the components, precision limits, operation, calibration, and maintenance of an Intoxilyzer, and information pertaining to the qualification, training and certification of the operator. The result in Ames under HRPP Rule 16(d) also appears to be consistent with HRPP Rule 16(b)(1)(vii).[6]

The discovery items requested in Ames appear to relate to materials that could be used to challenge whether the Intoxilyzer reading was sufficiently reliable to permit its admission. Similar to the situation in Ames, the discovery items here relate to materials that could be used to challenge whether the laser gun reading was sufficiently reliable to be admitted as substantive evidence of guilt. See State v. Assaye, 121 Hawai'i 204, 210, 214, 216 P.3d 1227, 1233, 1237 (2009) (determining that

---

[5] HRPP Rule 16(d), discretionary disclosure, provides: "[u]pon a showing of materiality and if the request is reasonable, the court in its discretion may require disclosure as provided for in this Rule 16 in cases other than those in which the defendant is charged with a felony, but not in cases involving violations."

[6] HRPP Rule 16(b)(1)(vii) provides that the prosecution disclose, if in its possession: "any material or information which tends to negate the guilt of the defendant as to the offense charged or would tend to reduce the defendant's punishment therefor."

4

an inadequate foundation existed without proof of the laser gun's accuracy).

Based on Brady v. Maryland, 373 U.S. 83 (1963), the Hawai'i Supreme Court has recognized that "the suppression by the prosecution of evidence favorable to the accused violates due process where the evidence is material to guilt or punishment, regardless of the good faith or bad faith of the prosecution." State v. Okumura, 78 Hawai'i 383, 401-02, 894 P.2d 80, 98-99 (1995); State v. Matafeo, 71 Haw. 183, 185-86, 787 P.2d 671, 672 (1990). In Brady, the United States Supreme Court held that the prosecution has a constitutional obligation under the due process clause to disclose evidence favorable to the accused upon request when such evidence is material to either guilt or punishment. Clearly, if the prosecution had evidence that the laser gun reading in this case was unreliable, it would be obligated to disclose such evidence to Langsner in discovery pursuant to Brady. Here, Langsner has not shown that undisclosed items requested in the Discovery Motion constitute Brady material or "material or information which tends to negate the guilt of the defendant" that is subject to disclosure pursuant to HRPP Rule 16(b)(1)(vii). In connection with her Discovery Motion, Langsner did not present any evidence suggesting that the laser gun reading may have been inaccurate or unreliable. Under these circumstances, we cannot conclude that the District Court abused its discretion in ruling on Langsner's Discovery Motion.

Consistent with Ames, it appears that the District Court did not abuse its discretion in denying the Discovery Motion with respect to the Operation, Maintenance, and Training Documents. The Operation, Maintenance, and Training Documents (items (c) and (d)iv, v, vi, vii, viii, ix, xi, xii, xiii, xvii, xviii, and xxi in the instant case) requested by Langsner are similar in nature to the manuals, documents pertaining to maintenance, and the documents pertaining to the qualification and training of the Intoxilyzer operator in Ames and therefore are not subject to discovery in a non-felony case.

5

With respect to the Speeding Documents (items (a) and (b) in the instant case), Langsner argues that they "were essential to challenge Rosalez's claim that he was qualified to operate the laser gun and that he had been operating the gun on the date of the incident in accordance with manufacturer recommended procedures." The Speeding Documents therefore relate to the operation of the laser gun, training of the officer, and accuracy of the laser reading. These are similar to the documents referenced in Ames and also are not subject to discovery under the circumstances of this case.

The Equipment Age Documents do not appear to be material to Langsner's defense. In order for a conviction to be based upon the results of a laser gun, the State is required to prove that "the nature and extent of an officer's training in the operation of a laser gun meets the requirements indicated by the manufacturer[,]" Assaye 121 Hawaiʻi at 215, 216 P.3d at 1238, and that the laser gun "tests conducted by [the officer] were procedures recommended by the manufacturer for the purpose of showing that the particular laser gun was in fact operating properly . . ." Id., at 212, 216 P.3d at 1235. If the laser gun is functioning properly on the date of the alleged offense, the age and date of purchase of the laser gun do not appear to be material to the defense. See HRPP Rule 16(d). Furthermore, the documents go to foundation and do not fall under the ambit of HRPP Rule 16(b)(1)(vii). It was therefore not an abuse of discretion for the District Court to deny the request for the Equipment Age Documents.

It was not an abuse of discretion for the District Court to deny discovery of the Written Verification Documents. Consistent with the Ames determination regarding operation and training manuals, it does not appear that "[w]ritten verification that said manufacturer's established procedures were followed" and "[w]ritten verification that the laser gun was in proper working order at the time the laser gun was used" "tend[] to negate the guilt of the defendant." HRPP Rule 16(b)(1)(vii).

Therefore, discovery of these items was not required pursuant to HRPP Rule 16(d). See also Ames, 71 Haw. at 313, 788 P.2d at 1286 ("discovery in a misdemeanor case that exceeds the limits of discovery established by HRPP Rule 16 for felony cases cannot be justified under the rule").

Langsner asserts that the District Court acted contrary to Honolulu Police Dept. v. Town, 122 Hawai'i 204, 214, 225 P.3d 646, 656 (2010) by stating that the materials could be obtained by subpoena. Town was issued subsequent to the judgment of conviction in this case. Even if Town may be considered applicable to the instant case, because the District Court did not err in denying discovery of the materials, any error of the District Court in discussing a subpoena procedure was harmless.

Accordingly, the District Court did not err in its ruling on Langsner's motion to compel discovery.

## II. Foundation

Langsner frames her point of error as insufficient evidence of the speed of the vehicle, arguing that, pursuant to Lo, 116 Hawai'i at 27, 169 P.3d at 979 (citing State v. Tailo, 70 Haw. 580, 582, 779 P.2d 11, 13 (1989)), such sufficient foundation of the accuracy of the laser must be provided "in order to sustain" the conviction.

Sufficiency of the evidence is reviewed "in the strongest light for the prosecution" "whether the case was before a judge or a jury" to determine "whether there was substantial evidence to support the conclusion of the trier of fact." State v. Matavale, 115 Hawai'i 149, 157-58, 166 P.3d 322, 330-31 (2007). Whether "necessary foundation for the introduction of evidence" has been established is reviewed for abuse of discretion. State v. Assaye, 121 Hawai'i at 210, 216 P.3d at 1233.

Langsner objected to the testimony of Officer Rosalez regarding the laser gun. Sufficient foundation for admission of the laser gun reading requires evidence that (1) the laser gun was tested according to manufacturer recommended procedures, Id.

7

at 210, 216 P.3d at 1233, and (2) the nature and extent of an officer's training in the operation of a laser gun meets the requirements indicated by the manufacturer. Id. at 215, 216 P.3d at 1238.

Evidence reflected that Officer Rosalez was initially trained in 1995 on the LTI 20-20 Marksman, consisting of "a[n] eight-hour class," "oral, written, a test, and also hands-on on how to operate the instrument." Officer Rosalez further confirmed that he had read the operator's manual for the LTI 20-20/UltraLyte that he used on the date of the offense, testifying that he reviewed the manual at "a refresher course back in '98" that was for the UltraLyte. Officer Rosalez confirmed that Laser Technologies, Inc. published the manual, that the training he received was in accordance with the manual's specifications based on his reading of the manual, and that the manual on the UltraLyte model that he used included "a section about how to test the laser device to make sure it's working properly." According to Officer Rosalez, the tests that the manual described were the same tests that he performed. Officer Rosalez acknowledged that he was "qualified in how to use the LTI 20-20 laser device[,]" which qualification was "valid on April, 25th, 2009[,]" which was the date of the instant citation. Officer Rosalez testified that he was certified on the UltraLyte when he took the refresher course in 1998 and the certification lasts until he retires or the model is changed.

Officer Rosalez testified about the four tests he did on the laser gun, consistent with manufacturer specifications, and explained the self-test, display test, Delta distance test and the scope alignment.

As to testing and operation, Officer Rosalez confirmed that he "performed all of these tests" on the date of the citation "prior to going out" and that the results showed that "the instrument was working properly". Officer Rosalez explained that "we do the scope alignment after each citation is written[;] [o]r every 15 minutes elapse we do a scope alignment" and that he

8

"did that in this case". Officer Rosalez acknowledged that he had used the laser "thousands of times", that he "verif[ied] whether or not the device was accurate, tested and working properly", and that he would not "issue a citation without doing the tests".

In light of the foregoing, the evidence establishes that the laser gun was tested by Officer Rosalez according to the manufacturer recommended procedures. The evidence also established that "the nature and extent of [Officer Rosalez's] training in the operation of a laser gun meets the requirements indicated by the manufacturer." Assaye, 121 Hawaiʻi at 215, 216 P.3d at 1238.

Additionally, evidence was presented that, as to the speed reading of the laser gun on Langsner's vehicle, Officer Rosalez had a reading of 72 miles per hour, that in the area there were four posted thirty-five-mile-per-hour speed limit signs, which were "clear and unobstructed", that Langsner "[had] to have passed". Accordingly, sufficient evidence existed for the District Court to convict Langsner of excessive speeding. Therefore,

IT IS HEREBY ORDERED THAT the Notice of Entry of Judgment and/or Order and Plea/Judgment, filed on October 20, 2009 in the District Court of the First Circuit, Honolulu Division, is affirmed.

DATED: Honolulu, Hawaiʻi, September 29, 2011.

On the briefs:

Craig W. Jerome
Deputy Public Defender
for Defendant-Appellant

Anne K. Clarkin
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee

Chief Judge

Associate Judge

Associate Judge

9